IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

KEVIN McINTYRE,                    )       CASE NO. 1:08 CV 1824
                                   )
              Plaintiff,           )
                                   )
       v.                          )
                                   )       MAGISTRATE JUDGE McHARGH
MICHAEL J.ASTRUE,                  )
Commissioner                       )
of Social Security,                )
                                   )       **MEMORANDUM OPINION**
              Defendant.           )

       This case is before the Magistrate Judge pursuant to Local Rule.  The issue before the

undersigned is whether the final decision of the Commissioner of Social Security

("Commissioner") denying Plaintiff Kevin McIntyre's application for Period of Disability and

Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and

423 is supported by substantial evidence and, therefore, conclusive.

       For the reasons set forth below, the Court AFFIRMS the decision of the Commissioner.

## I.  INTRODUCTION and PROCEDURAL HISTORY

       On March 25, 2005, Plaintiff filed an application for a Period of Disability and Disability

Insurance benefits, alleging a disability onset date of November 1, 2004 (Tr. 53-58).  Born on

June 18, 1965, Plaintiff was 42 years old at the time of the ALJ's determination and a "younger

individual" for purposes of the Social Security regulations.  *See* 20 C.F.R. §§404.1563.  Plaintiff

has a high school education (Tr. 24, 284).  He has past relevant work as a machine operator,

cleaner, general laborer, packer, and stock clerk (Tr. 24, 74, 284-86).  Plaintiff last worked in June 2004 (Tr. 74).

Plaintiff's application for benefits was denied initially and upon reconsideration (Tr. 42, 46).  Plaintiff requested a hearing and subsequently appeared and testified before Administrative Law Judge Edmund Round (the "ALJ") (Tr. 277-302).  The ALJ determined at Step Five of the five-step sequential evaluation[1] that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of sedentary work existing in significant numbers in the national economy and, therefore, was not disabled (Tr. 14-24).  Specifically, the ALJ found that Plaintiff retained the capacity to perform work that involved lifting a maximum of ten pounds;

---

[1]  The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability." *See* 20 C.F.R. §§ 404.1520(a). The Sixth Circuit has summarized the five steps as follows:

(1)    If a claimant is doing substantial gainful activity – i.e., working for profit – he is not disabled.

(2)    If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

(3)    If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)    If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

(5)    Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).

2

accommodated Plaintiff's need to sit and stand at will; did not involve climbing ladders, ropes, or scaffolds; did not involve kneeling, crouching, or crawling; involved no more than occasional climbing of ramps and stairs, balancing and stooping; accommodated Plaintiff's need to avoid all workplace hazards; and that limited Plaintiff to tasks involving only limited and superficial interaction with supervisors, coworkers and the public (Tr. 17-18).  The ALJ then concluded based on the vocational expert's testimony that a significant number of jobs accommodated Plaintiff's RFC (Tr. 24-25, 295-298). The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner (Tr. 5-7, 10).  On appeal, Plaintiff claims that the ALJ's decision is not supported by substantial evidence.

## II.  DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance benefits only when he establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when he cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20. C.F.R. §§ 404.1505.

## III.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Richardson v. Perales*, 402 U.S.

389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs., 667 F.2d 524, 535 (6th Cir. 1981)*. Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)*; *Kinsella v. Schweiker, 708 F.2d 1058, 1059 (6th Cir. 1983)*.

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner, 745 F.2d at 387*. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs., 884 F.2d 241, 245 (6th Cir. 1989)*.

## IV.  ANALYSIS

Plaintiff argues that the ALJ erred by finding that Plaintiff was capable of performing a limited range of sedentary work. Plaintiff's argument hinges on the ALJ's treatment of the opinions of Plaintiff's treating physicians and other medical evidence. Specifically, Plaintiff argues that the ALJ erred by rejecting the opinions of his treating physicians, whom he identifies as Drs. Tomsik, Watts and Baig, based on reasons that are unsupported by the evidence. Plaintiff further argues that because the ALJ appears to have rejected all of the medical opinions

in the record, the ALJ improperly substituted his own opinion for that of a medical expert in formulating Plaintiff's RFC, and that the RFC therefore is not supported by substantial evidence.

The regulations provide that the Commissioner generally should give more weight to the opinions of a claimant's treating sources than to those of non-treating sources. 20 C.F.R. § 404.1527(d)(2) provides:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

If a treating source's opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then the opinion is entitled to controlling weight. *Id.* However, a treating source's opinion may be afforded little weight if the plaintiff fails to show his impairments are supported by contemporaneous, objective clinical or diagnostic findings. *See Sullenger v. Comm'r of Soc. Sec.*, 255 Fed. Appx. 988, 993 (6th Cir. 2007) (citing *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)). Indeed, medical opinions, even those of treating doctors, are not entitled to substantial weight if based on subjective complaints and not objective, clinical evidence. *See* 20 C.F.R. §416.927(d)(2); *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health and Human Servs.*, 667 F.2d 538 (6th Cir. 1981); *see also Young v. Secretary of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1990); *Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); Social Security Ruling 99-2p .

If the opinion of a treating source is not accorded controlling weight, the ALJ still must determine how much weight to give to the opinion by considering the following factors: the

length of the treatment relationship, the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, and the specialization of the source.  20 C.F.R. § 404.1527(d).  If an ALJ rejects the opinion of a treating physician, he must articulate clearly "good reasons" for doing so.  See *Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004)*; 20 C.F.R. § 404.1527(d)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").  In order to be "good," those reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  SSR 96-2p.  Unless an ALJ's failure to adhere to this procedural requirement amounts to a harmless, *de minimis* procedural violation, the error is cause for remand.  Specifically, the Sixth Circuit has held that an ALJ's "failure to follow the procedural requirement of identifying the reasons for discounting the opinions and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 243 (6th Cir. 2007)*.

The *Wilson* Court explicitly left for another day the question of whether a *de minimis* violation of the § 1527(d)(2) procedural requirement could qualify as harmless error but noted a few situations in which it might: (1) if "a treating source's opinion is so patently deficient that the Commissioner could not possible credit it;" (2) "if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" or (3) "where the Commissioner has met the goal of § 1527(d)(2)-the provision of the procedural safeguard of

reasons-even though she has not complied with the terms of the regulation."  *Wilson*, 378 F.3d at 547.

### Dr. Watts and Dr. Tomsik

On October 14, 2005, Richard Watts, M.D., Plaintiff's treating cardiologist, completed a physical evaluation form (Tr. 205-07).  In the form, Dr. Watts indicated that Plaintiff's diagnoses included morbid obesity, chronic obstructive pulmonary disease ("COPD"), hypertension, ischemic heart disease, and degenerative joint disease of the knees (Tr. 205).  Dr. Watts opined that Plaintiff could stand or walk for three hours per day, twenty minutes at a time; sit for four hours per day, one hour at a time; and lift up to five pounds frequently and six to ten pounds occasionally (Tr. 207).  Dr. Watts further opined that Plaintiff had marked limitations in pushing/pulling, bending, reaching, and repetitive foot movements; moderate limitations in reaching and handling; and no limitations in seeing, hearing or speaking (Id.).  In response to a question regarding what observations or medical findings led to the above conclusions, Dr. Watts wrote, "obesity limits these activities" (Id.).  Dr. Watts concluded that Plaintiff was unemployable for twelve months or more (Id.).

In rejecting Dr. Watts' opinion, the ALJ stated that "Dr. Watts indicated that one of the impairments he based his opinion on was degenerative joint disease of the knees.  However, the objective evidence establishes that Mr. McIntyre's knees are actually in pretty good shape (Exhibit 13F at 16)" (Tr. 21).  Exhibit 13F at16 corresponds with the radiology report from Plaintiff's April 27, 2006 visit to Dr. Tomsik at Lakewood Hospital for right knee pain (Tr. 225).  The report reflects that "bilateral oblique and lateral views of the knee were obtained," which showed "[n]o evidence of fracture, joint effusion, or joint dislocation."  The report also states:

"[s]mall marginal spurring is noted at the medial femoral tibial joint.  No other significant bony of joint loose body is noted.  The joint spaces are maintained."  The report also contains the following handwritten statement at the bottom of the page: "Please tell patient: knee with small spur formation that corresponds to area of tenderness" (Tr. 225).  From the language contained in Exhibit 13F, the ALJ apparently gleaned that Plaintiff's "knees are actually in pretty good shape."  This conclusion does not appear to the Court necessarily to be an obvious one, given the information about bone spurring contained within the report and the fact that the report contains no direct indication that Plaintiff's knees are in good shape, and it may reflect that the ALJ improperly acted as a medical expert. Moreover, Plaintiff's diagnosis of degenerative joint disease is not contradicted by the evidence contained in Exhibit 13F or any other evidence in the record.  *See* tr. 175, (reporting that an x-ray of Plaintiff's right knee showed "mild narrowing of the medial joint compartment with adjacent spurring due to degenerative joint disease").  Thus, the Court is somewhat concerned about the ALJ's citation to Exhibit 13F as grounds for questioning Dr. Watts' opinion, particularly where the purported problem is Dr. Watts' statement that Plaintiff has degenerative joint disease, a statement that is not contradicted by the evidence, including Exhibit 13F.

However, the ALJ also stated in rejecting Dr. Watts' opinion that "Dr. Watts said [Plaintiff] had chronic obstructive pulmonary disease (COPD), but pulmonary functional testing ordered by Dr. Krause showed only minimal breathing problems (Exhibit 3F)" (Tr. 21).  Exhibit 3F corresponds with the records from the pulmonary function studies that Plaintiff underwent on or about May 26, 2005 at Dr. Krause's request (tr. 164-68), and Exhibit 4F is Dr. Krause's accompanying assessment and letter to Dr. Cantor (tr. 169-70).  Dr. Krause indicates in the letter

that the pulmonary function studies "show[ed] a minimal restrictive ventilatory defect," that he did not give Plaintiff any bronchodilators, and that Plaintiff had no wheezes, rales, or rhonchi, but Dr. Krause also indicates that Plaintiff's "[a]ir entry is markedly diminished" (Tr. 170). Nothing in Dr. Krause's assessment explicitly indicates whether or not Plaintiff has COPD. Although Dr. Krause's statement that Plaintiff's "[a]ir entry is markedly diminished" might indicate that Plaintiff has more than "minimal breathing problems," Dr. Krause's other statements tend to support the ALJ's assertion that the pulmonary studies showed only minimal breathing problems.

The ALJ also stated in rejecting Dr. Watts' opinion, "for these reasons and because Dr. Watts' opinion is not supported by the weight of the evidence or by [Plaintiff]'s wide range of activities, I give his opinion little weight" (Tr. 21).  As the ALJ stated earlier in the written decision regarding Plaintiff's activities,

> [Plaintiff] testified that he is able to perform daily activities but that it takes him longer because he has to take frequent breaks to rest.  He said that he sweeps up to ten minutes at a time.  He shops with his mother or sister.  He stated he is able to laundry [sic] at the Laundromat by himself. [Plaintiff] testified at the hearing that he doesn't socialize with anyone or have any hobbies, but evidence shows that he likes to draw, go to movies, and attend family gatherings (Exhibit 5F).  He said at the hearing that he never shops alone but said in applications connected with this appeal that he can drive, ride in a car, and shop alone up to two hours a week (Exhibit 5E at 4).  He is able to care for his pet birds (Exhibit 5E at 2).  The evidence establishes that his daily activities are not as limited as one would expect, given the allegations of disabling symptoms

(Tr. 20). Although it is not entirely clear from the exhibits cited by the ALJ that Plaintiff can shop alone, *see* tr. 96 (indicating that Plaintiff can go out alone, but also that Plaintiff's mother helps him shop), many of the ALJ's other assertions here are supported by the evidence he cites. Additionally, where there are discrepancies between a plaintiff's testimony and what the written

record shows, a reviewing court should not substitute its findings for those of the ALJ.  *Gooch v. Sec. of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir.1987); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (citing *Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)) ("Discounting [a claimant's] credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").   In light of the vast discretion given to ALJ's in making determinations regarding a claimant's credibility, the Court agrees that there is some evidence to support the ALJ's assertion that Plaintiff's "wide range of activities" does not comport with Dr. Watts' opinion.

Treating physician Dr. Tomsik also completed a residual functional assessment (Tr. 208-09).  Dr. Tomsik opined that Plaintiff could lift and carry six to ten pounds occasionally and five pounds frequently; stand and/or walk less than two hours in a regular work-day in twenty- to thirty-minute intervals; and sit up to eight hours a day in thirty- to forty-five- minute intervals. Dr. Tomsik noted that Plaintiff would need to elevate his legs to stool level when seated.  Dr. Tomsik also stated that Plaintiff had little to no ability to climb, balance, stoop, crouch, kneel, crawl, push, or pull; could only occasionally reach or perform gross manipulation; and could not work in extreme temperatures or be exposed to dust and fumes (Tr. 21).   Dr. Tomsik's assessment includes a number of medical findings to support his conclusions, including Plaintiff's history of uncontrolled blood pressure, morbid obesity, stasis edema and dyspnea (Tr. 208).

The ALJ stated in rejecting Dr. Tomsik's opinion,

[l]ike Dr. Watts, Dr. Tomsik based his opinion at least partially on leg pain, paresthesis, and breathing difficulty.  As stated above, there is no objective

10

> evidence of such problems.  Therefore, I give Dr. Tomsik's opinion little weight
> for the same reasons I gave Dr. Watts' opinions little weight" (Tr. 21).

The Court is not convinced that the ALJ is completely correct in stating that there is no objective medical evidence of Plaintiff's breathing difficulties, since even Exhibit 13F – which the ALJ cites as evidence supporting his decision to discount Dr. Watts' opinion – indicates that Plaintiff has a "minimal restrictive ventilatory *defect*" (emphasis added) and "markedly diminished" air intake" (Tr. 170).  Additionally, since the word "paresthesia" refers to a *sensation* of tingling, burning or prickling, the Court is unclear as to whether it is even possible to obtain objective evidence of such a condition.

The ALJ also stated in rejecting both Dr. Watts' and Tomsik's opinions that their treating relationships with Plaintiff were relatively brief, that there was "little in there [sic] progress notes to support the extreme limitations they offer," that their opinions, therefore, were somewhat conclusory, and that their findings were outweighed by other factors such as the minimal objective evidence and Plaintiff's "wide range of daily activities" (Tr. 21-22).  As Plaintiff notes, the evidence suggests that Plaintiff was treated at North Coast Ministry – where Dr. Watts and Dr. Tomsik practice – for approximately two years, so the Court is somewhat troubled by the ALJ's statement that Plaintiff's treating relationship with these doctors was relatively brief.  Additionally, although the progress notes from the North Coast Ministry are largely illegible – thereby making it difficult to determine whether the progress notes support the proffered limitations – the physical capacity assessments, especially that completed by Dr. Tomsik, contain numerous medical findings to support many of the conclusions they draw.  Thus, the Court is hesitant to agree with the ALJ's characterization of these opinions, particularly Dr. Tomsik's opinion, as "somewhat conclusory."

The parties do not dispute that Drs. Tomsik and Watts qualify as treating physicians under the regulations.  Furthermore, the ALJ clearly identified Drs. Watts and Tomsik as treating physicians, explicitly stated in his written decision that he gave their opinions "little weight," and attempted to give "good reasons" for rejecting their opinions in accordance with the § 1527(d)(2) procedural requirement.  For the reasons discussed in the preceding paragraphs, the Court concludes that some of the ALJ's proffered reasons for "rejecting" the opinions of Drs. Watts and Tomsik amount to "good" reasons; however, not all do.  The Court is particularly troubled with the ALJ's indications that Plaintiff's relationship with these doctors was "relatively brief," that their opinions were "somewhat conclusory," and the purported lack of objective evidence to support these doctors' opinions.  Given the ALJ's use of several reasons that do not appear to be supported as a basis for discounting these opinions, the Court is hesitant to conclude that the ALJ complied explicitly with the § 1527(d)(2) requirement to give "good reasons" for rejecting all the various portions of these treating physicians' opinions.  However, the Court holds that any failure on the part of the ALJ to adhere to the requirements of § 1527(d)(2) – where such failure occurred – does not amount to reversible error because such error was harmless.

As the *Wilson* Court noted, where "the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion;" the Commissioner's failure to comply with appears implicitly to have credited certain portions of Dr. Watts' and Dr. Tomsik's opinions, as evidenced by his RFC determination, even though he stated that he was discarding these opinions.  For instance, as Defendant notes, the ALJ's RFC assessment limits Plaintiff to lifting no more than 10 pounds.  This restriction is consistent with the opinions of Drs. Watts and

12

Tomsik that Plaintiff could lift up to five pounds frequently and six to ten pounds occasionally. The ALJ's RFC assessment also limits Plaintiff to jobs with an at-will sit/stand option. This restriction seems relatively consistent with the opinions of Dr. Watts – who found that Plaintiff could stand up to 3 hours per day, 20 minutes at a time and sit for 4 hours a day, one hour at a time – and Dr. Tomsik – who found that Plaintiff could stand for less than 2 hours a day, at intervals of 20-30 minutes each, and sit for 6 to 8 hours a day, for intervals of 20-30 minutes each. The postural limitations contained within the RFC – i.e., that Plaintiff can never kneel, crouch, or crawl and that he can never use ladders, ropes, or scaffolds also find support in Dr. Tomsik's and Dr. Watts' opinions. Thus, to the extent that the ALJ erred by failing to articulate what weight he gave to these portions of the physicians' opinions or to give good reasons for rejecting them, such error was harmless because the ALJ in fact credited these proffered limitations and made findings consistent with them in his RFC assessment.

However, it is apparent based on the ALJ's finding that Plaintiff is capable of a limited range of sedentary work that the ALJ rejected Dr. Watts' opinion that Plaintiff was unemployable for twelve months or more. The Court notes that a physician's statement as to whether a claimant is disabled or unable to work is never controlling. *See* [20 C.F.R. § 416.927(e)(1)](). Indeed, because a claimant's employability – *i.e.*, whether he is disabled – is an issue ultimately reserved to the Commissioner, a physician's opinion on this topic was not entitled to any special significance. *See* [*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530-31 (6th Cir. 1997)](); *see also* 20 C.F.R. §§ 404.1527(e)(1)-(3). As explained above, the ALJ gave some good reasons for discounting Dr. Watts' opinion generally – for instance, that the pulmonary studies showed only minimal breathing problems, and that Dr. Watts' opinion is not

consistent with Plaintiff's level of activities.  The Court also notes that an ALJ is not required to credit a treating physician's opinion that is inconsistent with the objective medical evidence or to give substantial weight to a treating physician if his opinion is a mere conclusory statement, unsupported by clinical and/or diagnostic findings.  *See Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993); *Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 538 (6th Cir. 1981). Although Dr. Watts' assessment generally includes a some medical findings and descriptions of Plaintiff's medical conditions, his assessment does not explicitly indicate why he believes that Plaintiff is unemployable for twelve months or more.  Accordingly, the Court finds that the ALJ's implicit rejection of this portion of Dr. Watts' opinion is supported by the evidence and complied with the applicable procedural requirements.

The Court further finds that the ALJ adequately dealt with the treating physicians' opinions in determining that Plaintiff can occasionally balance and stoop.  Dr. Tomsik indicated that Plaintiff could never balance or stoop (Tr. 209).  Dr. Watts indicated that Plaintiff's ability to bend was "markedly limited," but there is no indication in his assessment as to whether Plaintiff can balance (Tr. 207).  Dr. Baig, who does not qualify as a treating physician for reasons discussed more thoroughly below, indicated that Plaintiff could frequently balance but rarely or never stoop (Tr. 253).  Where there are conflicting medical opinions resulting from essentially the same objective medical data, it is the responsibility of the ALJ to resolve those conflicts.  *See Crum v. Sullivan*, 921 F.2d 642, 645 (6th Cir. 1990); *see also Bradley v. Secretary of Health and Human Servs.*, 862 F.2d 1224, 1227-28 (6th Cir. 1988).  The ALJ clearly indicated in his written decision that he gave great weight to the opinion of state agency physician Dr. Hinzman that Plaintiff can occasionally balance and stoop and that he can occasionally use

14

ramps and stairs.  The ALJ explained that "the evidence supports these portions of the Bureau's opinion" (Tr. 20). Although the ALJ could have been more specific as to the reasons he gave little weight to the opinions of Dr. Tomsik, Dr. Watts (with regard to bending), and Dr. Baig (with regard to stooping, and why Plaintiff cannot balance "frequently") on these particular points, the ALJ did discuss the various physicians findings regarding Plaintiff's ability to balance and stoop and gave reasons – some of which qualify as "good" reasons – for discounting those opinions.  For instance, the ALJ noted in stating that he gave little weight to Dr. Tomsik's and Dr. Watts' opinions generally that their opinions were somewhat conclusory and that they offered little to support their proffered limitations. Although the Court finds that this statement does not necessarily hold true with respect to the whole of these physicians' opinions, the Court does find support for it in the record with respect to the balancing and stooping limitations specifically.  Dr. Tomsik does not include any medical findings to support his stooping and balancing limitations (tr. 209); Dr. Watts states only that "[o]besity limits these activities" (tr. 207).  The Court therefore concludes that the ALJ at least minimally complied with the procedural requirement with respect to this issue. Additionally, the Court notes that the ALJ's decision on this point is supported by substantial evidence, including the state agency physicians' opinions as well as Plaintiff's own testimony at the hearing that he has to walk upstairs to get into his apartment (Tr. 289-90).

In sum, while the ALJ certainly could have done a better job explaining what weight he actually gave to the various portions of the treating physicians' opinions and the reasons for that weight, the Court finds that the ALJ's RFC assessment makes it more or less clear which portions of the physicians' opinions he credited; that the ALJ gave some "good reasons" for the

portions of the opinions that he rejected; that the ALJ's RFC assessment is supported by substantial evidence; that any error on the part of the ALJ in dealing with Dr. Watts' and Dr. Tomsik's opinions was harmless; and that remand based on non-compliance with §1527(d)(2) therefore is not required.

### Dr. Baig

Plaintiff also characterizes Dr. Baig as a treating physician and argues that the ALJ erred by rejecting her opinion based on reasons that are unsupported by the record.   The ALJ summarized Dr. Baig's opinion as follows:

> Dr. Baig opined that Plaintiff could lift up to 13 pounds to his waist but only 7.5 overhead.  She said he could stand and walk less than two hours in ten-minute intervals and sit less than four hours in 30 minute intervals in a normal workday. Dr. Baig said [Plaintiff] had little or no ability to climb, stoop, crouch, kneel, crawl, reach, push, or pull.  She said he could occasionally handle and perform gross manipulation and could frequently balance, feel, and perform fine manipulation.  Dr. Baig said [Plaintiff] should avoid workplace hazards and was in 'moderate' to 'severe' pain

(Tr. 23).  The ALJ then stated that he rejected Dr. Baig's opinion in large part because it is a mere recitation of physical therapist Ms. Massamino's opinion.  He stated:

> Number one, she merely regurgitates Ms. Massamino's opinion and does not even cite any medical findings, other than Ms. Massamino's report, as support for her opinion.  Next, the evidence establishes that she only examined [Plaintiff] on one occasion, and at that examination she simply referred him to Ms. Massamino.  As such, her own examination and the objective evidence do not support Dr. Baig's opinion

(Id.).

The ALJ is correct in his statement that Dr. Baig's assessment is based on Mr. Massamino's report.   Dr. Baig's assessment specifically indicates that the physical capacity testing on which she based her report was completed by Ms. Massamino (Tr. 253).  Interestingly,

16

however, the ALJ appears to have credited certain portions of Ms. Massamino's opinion, even as he stated that he gave that opinion "little weight" and used that conclusion as a basis for discrediting Dr. Baig's opinion.  Specifically, the ALJ stated that he gave "little weight to Ms. Massamino's opinion, although I adopted certain portions of it into the residual functional capacity I assessed, because the objective medical evidence does not support this position" (Tr. 23).  The ALJ does not elaborate further in this portion of the written decision as to which portions of Ms. Massamino's assessment he included in his RFC finding.  However, he summarizes Ms. Massamino's opinion as follows:

> Following testing, Ms. Massamino concluded that Mr. McIntyre could not perform his past relevant work but could perform a job that allowed the flexibility to sit and stand when needed as well as shorter hours.  She said he was limited with the ability to sit, stand, walk, twist, reach, stoop, and lift objects and that he had decreased endurance and strength" (Tr. 22-23).

The ALJ also stated in explaining why he gave little weight to Ms. Massamino's opinion:

> She said Mr. McIntyre was limited by fatigue, shortness of breath, lower back pain, and bilateral leg pain, all conditions that result from Mr. McIntyre's obesity.  She also noted he had 'very decreased endurance and strength.'  However, the objective evidence does not provide any reason or support for Ms. Massamino's opinion.  Mr. McIntyre's 'very decreased endurance and strength' seems to stem from his sedentary lifestyle but is not explained by the objective evidence of his severe impairments" (Tr. 23).

Although the Court again finds questionable some of the ALJ's reasoning for discounting these opinions to the extent that he did so – for instance, the ALJ's musing that "Mr. McIntrye's 'very decreased endurance and strength' seems to stem from his sedentary lifestyle" makes little sense to the Court and probably could not constitute a "good reason" for purposes of discounting a treating physician's opinion – the Court does not find that Dr. Baig, or Ms. Massamino for that matter, qualifies as a treating physician for purposes of the rule and procedural requirement.  As

the ALJ suggests, nothing in the evidence indicates that either Dr. Baig or Ms. Massamino examined Plaintiff more than once.  A doctor who examines a claimant only once rarely – if ever – will qualify as a treating physician.  *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 875 (6th Cir. 2007) (quoting 20 C.F.R. §404.1502) ("A treating source, accorded the most deference by the SSA, *has not only examined the claimant but also has an 'ongoing treatment relationship'* with her consistent with accepted medical practice.") (Emphasis added); *see also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 506-07 (6th Cir. 2006) (determining that a single examination did not suffice to render a doctor a "treating physician" for purposes of Social Security law in that case and noting that "a plethora of decisions unanimously hold that a single visit does not constitute an ongoing treatment relationship").  Additionally, "[w]hile it might be ideal for an ALJ to articulate his reasons for crediting and discrediting each medical opinion, it is well settled that:

> [a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.  Nor must an ALJ make explicit credibility findings as to each bit of conflicting testimony, so long as his factual findings as a whole show that he implicitly resolved such conflicts.

*Id.* at 507-08 (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)).  Thus, while the Court notes that the ALJ could have done a better job here too in articulating what weight he gave the various portions of Dr. Baig's and Ms. Massamino's opinions and the reasons for that weight, the Court finds that the ALJ's treatment of these opinions is not cause for remand.

### Dr. El-Gazzar

To the extent that Plaintiff claims that the ALJ erred by failing to give proper weight to the opinion of treating physician Mourad El-Gazzar, M.D. regarding Plaintiff's mental

18

impairments, the Court finds that the ALJ gave good reasons for rejecting this opinion.  Dr. El-Gazzar's medical records reflect that Dr. El-Gazzar treated Plaintiff for obesity, hypertension, coronary artery disease and cellulitis of the left groin (Tr. 238-60).  They do not reflect that Dr. El-Gazzar ever treated Plaintiff for any mental impairments (Id.).  Yet, Dr. El-Gazzar completed a medical source statement regarding Plaintiff's mental capacity in which he indicated that Plaintiff had poor to no ability in most areas of mental functioning, including making occupational adjustments, intellectual functioning and making personal and social adjustments (Tr. 236-37).  Dr. El-Gazzar further stated that Plaintiff had a fair ability to follow work rules; use judgment; relate to co-workers; interact with supervisors; understand, remember and carry out simple job instructions; maintain appearance; and manage his funds (Id.).  Dr. El-Gazzar also stated that Plaintiff had a good ability to leave his home on his own (Tr. 237).

The ALJ stated in rejecting this opinion:

I considered this opinion, but give it little weight, because Dr. El-Gazzar is not a psychologist or a psychiatrist.  The psychologists who saw Mr. McIntyre and reviewed his file are in a better position to offer opinions in this area. Additionally, Mr. McIntyre has not sought or received any mental health treatment other than from his primary care physicians, indicating that either his treating sources do not believe he needs specialized treatment or that he himself does not feel it is necessary.  Either way, Dr. El-Gazzar's opinion is not supported by his own treatment notes, which focus on physical problems, or by the evidence of record

(Tr. 22).

The Court agrees that nothing in the evidence indicates that Dr. El-Gazzar is a mental health professional or that he ever treated Plaintiff for his mental impairments.  The Court also agrees that Dr. El-Gazzar's notes focus on Plaintiff's physical condition and do not support the limitations contained in Dr. El-Gazzar's mental capacity assessment.  Thus, the Court finds that

the ALJ gave good reasons for discounting this opinion and that the ALJ was entitled to rely on the opinions of the state agency physicians' opinions in determining Plaintiff's mental functional capacity.  The state agency physicians determined that Plaintiff was mildly restricted in activities of daily living; moderately limited in his ability to maintain social functioning; mildly limited in his ability to maintain concentration, persistence or pace; and that Plaintiff would have difficulty dealing with the public or working closely with others (Tr. 194-96, 198-200, 202-04).

Finally, Plaintiff argues that the ALJ erred in his finding that Plaintiff can perform work involving "only limited and superficial interaction with . . . the public" because the undisputed evidence shows that Plaintiff cannot do any work involving the public.  In making this finding, the ALJ stated that he was rejecting the opinions of the state agency physicians at Exhibits 8F, 9F and 10F.  Two of these physicians stated that Plaintiff "would have difficulty dealing with the public or working closely with others.  However, he can relate appropriately in a superficial way. He can do work that does not require working with the public or closely with others" (Tr. 200, 204).  In rejecting this portion of the physicians' opinions, the ALJ stated,

> I give no weight to their opinion that he is limited to work that does not require working with the public.  While he would need to be limited in his contact with the public, he is not precluded from such contact.  He was able to respond appropriately to all of the doctors who examined him as well as to the questions posed at the hearing.  The evidence shows that he attends movies and family gatherings.  Therefore, I am convinced that he can work with the public, if his interaction is only superficial

(Tr. 21).

While the ALJ apparently felt that the state agency physicians' statements indicated that they thought Plaintiff could not do work involving the public, the Court is not convinced that the

statements are entirely clear on this point.  The physicians stated that Plaintiff "would have difficulty dealing with the public or working closely with others.  *However, he can relate appropriately in a superficial way.*" The italicized statement, when viewed in combination with the preceding statement suggests that Plaintiff *can* deal with the public, though only in a superficial way.  While the Court acknowledges that the next statement reads, "[h]e can do work related tasks that do not require working with the public," the Court finds that the two other statements quoted above suggest that there is some question as to whether these physicians in fact meant to indicate that Plaintiff cannot work with the public even in a *superficial* way.  In addition, the ALJ noted that Plaintiff's purported inability to deal in any way with the public is not consistent with his appropriate behavior – both at the hearing and at visits with medical professionals – and his activities, which involve going to family gatherings, shopping and the movies.  Thus, the Court finds that there is substantial evidence to support this portion of the ALJ's RFC assessment.

## V.  **DECISION**

For the foregoing reasons, the Court finds that the decision of the Commissioner is supported by substantial evidence.  Accordingly, the Court AFFIRMS the decision of the Commissioner.

s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge

Date: November 9, 2009.

21